UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(Tampa Division)

| | |
|---|---|
| PELEUS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NEXT GENERATION MANAGEMENT, INC., BLACK & VEATCH CORPORATION, OVERLAND CONTRACTING, INC., ADRIAN LOPEZ RAMIREZ, individually and as personal representative of the Estate of Adrian Lopez, and FRANCISCA MATIANO DE LOPEZ,<br><br>Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Peleus Insurance Company ("Peleus") files this Complaint for Declaratory Judgment and Unjust Enrichment, and, upon information and belief, states as follows:

**INTRODUCTION**

1. This is an insurance coverage dispute in which Peleus seeks a judicial determination of its rights and obligations, if any, under a primary policy and an excess policy issued to Next Generation Management, Inc., for a suit brought by

Adrian Lopez Ramirez and Francisca Matiano De Lopez arising out of a gas explosion at their home in Bradenton, Florida.

2. As alleged in the underlying complaint, Next Generation Management, Inc. was conducting horizontal directional drilling or directional boring at a site in Bradenton, about 300 feet from Mr. Ramirez's and Ms. Lopez's home on December 3, 2020, when it struck an underground natural gas line.

3. Gas from the damaged gas line allegedly flowed through a sewer line due to the drilling and into Mr. Ramirez's and Ms. Lopez's home, where it caused an explosion and fire.

4. Mr. Ramirez and Ms. Lopez, along with their son, Adrian Lopez, were in the home at the time of the explosion and fire. All three suffered injuries, and Adrian's injuries were fatal.

5. Next Generation Management, Inc., Black & Veatch Corporation, and Overland Contracting, Inc. have sought insurance coverage from Peleus for the claimants' underlying lawsuit, in which Mr. Ramirez and Ms. Lopez seek to recover for their injuries sustained in the explosion and fire, as well as for the death of Adrian.

6. Both the primary policy and the excess policy issued by Peleus include a "Total Pollution Exclusion" that bars coverage for injury or damage that

would not have occurred, in whole or in part, but for the discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

7. The injuries sustained by Mr. Ramirez, Ms. Lopez and Adrian would not have occurred but for the dispersal, seepage, migration, release or escape of pollutants—namely, the gas that flowed from the damaged gas line through the sewer and into their home—and, therefore, coverage for the underlying action is barred by the Total Pollution Exclusion.

8. Accordingly, Peleus is entitled to a judicial declaration that coverage for the underlying action is barred in its entirety by the Total Pollution Exclusion.

## PARTIES, JURISDICTION AND VENUE

9. Plaintiff Peleus is a Virginia corporation with its principal place of business in Richmond, Virginia.

10. Defendant Next Generation Management, Inc. ("NGM") is a Florida corporation with its principal place of business in Geneva, Florida.

11. Defendant Black & Veatch Corporation ("Black & Veatch") is a Delaware corporation with its principal place of business in Overland Park, Kansas.

12. Overland Contracting, Inc. ("Overland"), is a Delaware corporation with its principal place of business in Garner, North Carolina.

13.     Adrian Lopez Ramirez is a resident of Bradenton, Florida, and a Citizen of the State of Florida.

14.     Francisca Matiano De Lopez is a resident of Bradenton, Florida, and a Citizen of the State of Florida.

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

16.     Defendants NGM, Black & Veatch, and Overland have tendered the underlying lawsuit to Peleus and are seeking more than $75,000 in defense and indemnity from Peleus under its policies. In the underlying lawsuit, Mr. Ramirez and Ms. Lopez seek to recover damages in excess of $75,000 for their past and future medical expenses, lost wages, loss of earning capacity, loss of net accumulations, disability, inconvenience, pain, suffering, mental anguish and emotional distress related to their own injuries, as well as damages for the wrongful death of their son including medical and funeral expenses, loss of prospective net accumulations, and mental pain and suffering.

17.     This is an action for declaratory judgment, filed pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, *et seq*. An actual case and controversy of a justiciable nature exists between Plaintiff and Defendants,

involving the rights, duties, and obligations, if any, of the parties under insurance policies issued by Peleus to NGM.

18. Venue in this District is proper pursuant to 28 U.S.C. § 1391(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in this District.

## THE POLICIES

**The Primary Policy**

19. Peleus issued Policy No. 164 GL 0179574-00 to NGM, for the Policy Period of July 21, 2020 to July 21, 2021 (the "Primary Policy"). A true and correct copy of the Primary Policy is attached as **Exhibit 1**.

20. Peleus, through its agent in Georgia, communicated its acceptance of NGM's offer to purchase the Primary Policy and issued the binder for the Primary Policy to NGM's agent in Georgia.

21. The Primary Policy was cancelled effective March 26, 2021.

22. The Primary Policy's Commercial General Liability Coverage Part ("CGL Coverage Part") includes $1 million each occurrence and $2 million aggregate limits of liability. *See* Primary Policy, CGL Coverage Part Declarations.

23. Subject to all of the stated terms, conditions and limitations, the Primary Policy's Coverage A – Bodily Injury and Property Damage Liability Insuring Agreement affords specified coverage for those sums that the insured

becomes legally obligated to pay as damages because of "bodily injury" or "property damage" that takes place during the policy period and is caused by an "occurrence." *See* Primary Policy, CGL Coverage Part, Section I.1.

24. NGM is the Named Insured under the Primary Policy.

25. The Primary Policy includes as additional insureds "all persons or organizations as required by written contract with the Named Insured,"

> but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. [NGM's] acts or omissions; or
>
> 2. The acts or omissions of those acting on [NGM's] behalf;
>
> in the performance of [NGM's] ongoing operations for the additional insured(s) ….

Primary Policy, Section II, as amended by the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement.

26. The Primary Policy defines "bodily injury" to mean bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time. *See* Primary Policy, CGL Coverage Part, Section V.3.

27. "Occurrence" is defined to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *See* Primary Policy, Section V.13.

28. Coverage A of the Primary Policy is subject to a "Total Pollution Exclusion," which provides that coverage does not apply to:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Primary Policy, CGL Coverage Part, Section 1.2.f, as amended by the Total Pollution Exclusion Endorsement.

29. The Primary Policy defines the term "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Primary Policy, Section V.15.

**The Excess Policy**

30. Peleus issued Excess Policy No. AUX4240500-00 to NGM for the Policy Period of July 21, 2020 to July 21, 2021 (the "Excess Policy"). A true and correct copy of the Excess Policy is attached as **Exhibit 2**.

31. Peleus, through its agent in Georgia, communicated its acceptance of NGM's offer to purchase the Excess Policy and issued the binder for the Excess Policy to NGM's agent in Georgia.

32. The Excess Policy was cancelled effective March 26, 2021.

33. The Excess Policy includes $4 million each occurrence and $4 million aggregate limits of liability. *See* Excess Policy, Declarations.

34. Except as otherwise provided, the Excess Policy follows the same provisions, exclusions and limitations as are contained in the Primary Policy, and the Excess Policy affords coverage no broader than that provided by the Primary Policy. *See* Excess Policy, Commercial Excess Liability Coverage Form ("Excess Coverage Form").

35. The Excess Policy applies only in excess of the the Primary Policy. *See* Excess Policy, Declarations, Item 4, and Schedule of Underlying Insurance.

36. An additional insured under the "applicable underlying insurance," including the Primary Policy, is an additional insured under the Excess Policy. *See* Excess Policy, Excess Coverage Form, Section I.1.b.

37. The Excess Policy includes a "Total Pollution Exclusion," which provides that the insurance does not apply to "injury or damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. *See* Excess Policy, Total Pollution Exclusion Endorsement.

38. The definition of "pollutants" in the Primary Policy also applies to the Excess Policy. *See* Excess Policy, Section IV.

39. The Excess Policy defines "injury or damage" to mean any injury or damage, covered in the "applicable underlying insurance" arising from an "event." Excess Policy, Section IV.5.

40. "Applicable underlying insurance" means the policy or policies of "underlying insurance" that provide underlying coverage or loss that resulted in a claim under the Excess Policy—here, the Primary Policy. *See* Excess Policy, Section IV.1.

41. "Event" means, including but not limited to, an occurrence, offense, accident or act, to which the "applicable underlying insurance" applies. *See* Excess Policy, Section IV.4.

42. Together, the Primary Policy and Excess Policy are referred to as the "Policies."

## THE UNDERLYING ACTION AND CLAIM FOR COVERAGE

43. On or about June 14, 2021, Adrian Lopez Ramirez, individually and as personal representative of the Estate of Adrian Lopez, and Francisca Matiano De Lopez (together, the "Claimants") filed their initial complaint in the action captioned *Ramirez, et al. v. Next Generation Management, Inc., et al.*, No. 21-CA-004854 (Fla. Cir. Ct., Hillsborough Cnty.) (the "Underlying Action") against NGM and Tampa Electric Company d/b/a Peoples Gas System ("TECO").

44. The Claimants filed the currently operative Corrected Second Amended Complaint in the Underlying Action on January 6, 2022, which names as defendants NGM, TECO, Frontier Florida, LLC d/b/a Frontier

Communications of Florida ("Frontier Florida"), and Black & Veatch. *See* Corrected Second Amended Complaint ("SAC"), attached as **Exhibit 3**.

45. On April 20, 2022, the Claimants filed an Amended Motion for Leave to File Third Amended Complaint, seeking leave to file a Third Amended Complaint naming as defendants NGM, TECO, Verizon Sourcing, LLC, Overland, Black & Veatch, and Manweiler Telecom Consulting, LLC. *See* Amended Motion for Leave to File Third Amended Complaint with Proposed Third Amended Complaint ("TAC"), attached as **Exhibit 4**.

46. In the Underlying Action, the Claimants allege that, on or about December 3, 2020, NGM was conducting horizontal directional drilling or directional boring ("HDD") at a site in Bradenton, Florida, approximately 300 feet from the Claimants' home when NGM struck and damaged an underground natural gas line. *See* SAC, ¶¶ 22-24, 32.

47. As alleged in the Underlying Action, TECO and fire department personnel responded to the incident and allegedly found that gas was flowing from the gas line into a sewer line due to NGM's drilling. *See* SAC, ¶¶ 25-29.

48. The Claimants allege that the defendants in the Underlying Action failed to notify Claimants of the dangers of the gas leak despite the proximity of their home to the site of the leak. *See* SAC, ¶¶ 35-36.

49. Claimants allege that the gas flowed through the sewer, entering their home, for more than two hours, eventually causing an explosion and fire in their home while Claimants and their son were inside. *See* SAC, ¶¶ 38-40.

50. Mr. Ramirez and his son Adrian Lopez allegedly suffered significant burns, with Adrian Lopez dying from his injuries on January 13, 2021. Ms. Lopez also allegedly sustained injuries in the explosion. *See* SAC, ¶¶ 42-46.

51. As against NGM, the SAC asserts a count for negligence, alleging that NGM was negligent by, among other things, failing to implement safe working practices, failing to properly train and supervise employees working on the HDD project, and failing to develop a site-specific emergency action plan. *See* SAC, ¶ 79.

52. Claimants allege that Black & Veatch contracted with Frontier Florida to perform or oversee HDD at the site in Bradenton, and that NGM contracted with or was a subcontractor hired by Black & Veatch to conduct the HDD work and was performing this work on the day of the incident. *See* SAC, ¶¶ 63-67, 151-153.

53. As against Black & Veatch, the SAC assert counts for negligence and vicarious liability for NGM's alleged negligence. *See* SAC, ¶¶ 149-183.

54. The proposed TAC includes the same allegations and counts as the SAC, and adds counts against Overland for negligence and vicarious liability for

NGM's purported negligence, alleging that Overland contracted with NGM for NGM to perform HDD at the Bradenton site. *See* TAC, ¶¶ 206-240.

57. NGM tendered the Underlying Action to Peleus for coverage under the Primary Policy.

56. Black & Veatch and Overland have tendered the Underlying Action to Peleus for coverage under the Primary Policy as additional insureds pursuant to a Subcontract for Construction Services between NGM and Overland (the "Subcontract").

57. Peleus currently is providing NGM with a defense in the Underlying Action, subject to a full and complete reservation of its rights under the Primary Policy and at law.

58. Peleus also currently is providing Black & Veatch with a defense in the Underlying Action, separate and apart from the defense of NGM, subject to a full and complete reservation of its rights under the Primary Policy and at law.

### COUNT I – REQUEST FOR DECLARATORY RELIEF
### POLLUTION EXCLUSION – PRIMARY POLICY

59. Peleus incorporates by reference paragraphs 1-58 as if fully set forth herein.

60. Pursuant to the Total Pollution Exclusion, coverage under the Primary Policy does not apply to:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Primary Policy, CGL Coverage Part, Section 1.2.f, as amended by the Total Pollution Exclusion Endorsement.

61. The Primary Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Primary Policy, Section V.15.

62. The gas that allegedly flowed through a break in the natural gas line, through the sewer, and into Claimants' home, is a "pollutant" within the meaning of the Primary Policy.

63. The Underlying Action alleges injury that would not have occurred, in whole or in part, but for the discharge, dispersal, seepage, migration, release or escape of that "pollutant."

64. Therefore, the Total Pollution Exclusion applies to bar all coverage under the Primary Policy for the Underlying Action.

### COUNT II – REQUEST FOR DECLARATORY RELIEF
### POLLUTION EXCLUSION – EXCESS POLICY

65. Peleus incorporates by reference paragraphs 1-58 as if fully set forth herein.

66. Pursuant to the Total Pollution Exclusion, coverage under the Excess Policy does not apply to:

> "Injury or damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Excess Policy, Total Pollution Exclusion Endorsement.

67. The definition of "pollutants" in the Primary Policy also applies to the Excess Policy. *See* Excess Policy, Section IV.

68. The Underlying Action alleges injury or damage that would not have occurred, in whole or in part, but for the discharge, dispersal, seepage, migration, release or escape of "pollutants"—that is, the gas that flowed through a break in the gas line, through the sewer, and into the Claimants' home.

69. Therefore, the Total Pollution Exclusion applies to bar all coverage under the Excess Policy for the Underlying Action.

WHEREFORE, Peleus Insurance Company respectfully moves this Court for entry of Declaratory Judgment in its favor as follows:

a) Declaring that the Total Pollution Exclusion applies to bar coverage in its entirety under the Primary Policy for the Underlying Action;

b) Declaring that the Total Pollution Exclusion applies to bar coverage in its entirety under the Excess Policy for the Underlying Action;

c) Declaring that Peleus owes no duty to defend or indemnify NGM, Black & Veatch, Overland, or any other party under the Primary Policy or the Excess Policy in connection with the Underlying Action or the December 3, 2020 incident; and

d) Awarding such further relief as the Court may deem appropriate.

Dated: May 13, 2022

**ROBERTS TATE LLC**

/s/ *Lena Mirilovic*
Lena Mirilovic
Florida Bar No. 92492
lmirilovic@robertstate.com
Parker J. Lavin
(*pro hac vice motion to be filed*)
plavin@robertstate.com
*Attorneys for Plaintiff Peleus Insurance Company*

2487 Demere Road, Suite 400
St. Simons Island, GA 31522
912.638.5200 (telephone)
912.638.5300 (facsimile)